Name: __KANAL V. GASTON__

Address: __P.O. BOX 4682__

__PORTLAND, OR 97208__

Phone Number: __N/A__

E-mail Address: __LEGALKAN2012@YAHOO.COM__

**Pro Se**

```
                          FILED
                          LODGED      MAIL
                          RECEIVED

                        JAN 1 2 2012

                           AT SEATTLE
                  CLERK U.S. DISTRICT COURT
                WESTERN DISTRICT OF WASHINGTON
                BY                      DEPUTY
```

## UNITED STATES DISTRICT COURT
## FOR THE
## WESTERN DISTRICT OF WASHINGTON

_____Kanal V. Gaston_____ )
                                    )   Case Number: **12·CU· 0069 RAS**
          Plaintiff(s),             )
                                    )
     vs.                            )   _____
                                    )
(1) Microsoft Corporation           )   _____
(2) Trend Micro Incorporated        )
(3) Symantec Corporation            )        COMPLAINT
(4) VeriSign, Inc.                  )   _____
(5) BBVA Compass Bancshares, Inc. or)
   Compass Bankshares, Inc. and/or  )   JURY DEMAND ON ALL COUNTS
   Compass Bank                     )
(6) Harris County (Government) and/or)  _____
   Harris County District Attorney's)
   Office, State of Texas and/or Patricia)  _____
   Lykos, Jim Leitner, Joni Vollman, Kate)
   Dolan, Kelli Johnson, Beth Shipley,)  _____
   Kaylynn Williford, Renee Magee,  )
   Steven Januhowski, Doug Osterburg,)
   Don McWilliams, Wendy Baker,     )
   Tommy Strange, Patrick Smith, Tracy)
   Peterson and/or others unknown at this)
   time.                            )
(7) Texas Office of the Attorney General)
   and/or State of Texas            )
(8) Maria Raquel Rivas_____    )
(9) Travis County (Government) and/or)
   Austin Police Department (APD), State)
   of Texas                         )
(10)     Pat Donahue, Postmaster    )
         General, United States Postal)
   _____Service and/or US Department)
   _____of Treasury   and/or Internal)
   _____Revenue Service and/or     )

12-CV-00069-CMP

1

|  | The Federal Bureau of |
| 1 | Investigation (FBI) and/or |
| 2 | US Central Intelligence |
|  | Agency (CIA) |
| 3 | And/or US Joint Terrorism |
|  | Task Force and/or |
| 4 | United States of America |
|  | (11)    State of New Jersey and/or the |
| 5 | New Jersey State Police (NJSP) |
|  | and/or Jafca Mandzuik |
| 6 | (12)    New York City and/or New |
|  | York City Corporation Counsel |
| 7 | and/or Andrew Anzalone and/or |
|  | Nicole Murphy |
| 8 | (13)    Lexis-Nexis Group and/or Reed |
|  | Elsevier, Inc. |
| 9 | (14)    Capitol Information Group, |
|  | Inc. and/or Business |
| 10 | Management Daily |

1    The Federal Bureau of
     Investigation (FBI) and/or
2    US Central Intelligence
     Agency (CIA)
3    And/or US Joint Terrorism
     Task Force and/or
4    United States of America
     (11)    State of New Jersey and/or the
5            New Jersey State Police (NJSP)
             and/or Jafca Mandzuik
6    (12)    New York City and/or New
             York City Corporation Counsel
7            and/or Andrew Anzalone and/or
             Nicole Murphy
8    (13)    Lexis-Nexis Group and/or Reed
             Elsevier, Inc.
9    (14)    Capitol Information Group,
             Inc. and/or Business
10           Management Daily
     (15) Google, Inc.
11   (16) Valero Energy Corporation
     (17) Qatar Gas Operating Company LTD
12        And/or Petro Staff International
     (18) Wells Fargo & Company
13   (19) The Lodge At Kingwood Apartments
          And Asset Plus Companies and/or
14        Asset Plus Corp.
     (20) The Village At Riverside Apartments
15        And/or the Hayman Company
     (21) All State Insurance Company and/or
16        Allstate Corporation
     (22) T-Mobile USA, Inc.
17   (23) Plake and Mintz, PLLC and/or
          Sylvia Mintz
18   (24) H And H Investment Real Estate
          Investments, Inc.
19   (25) The PNC Financial Services Group,
          Inc.
20
          Defendant(s).
21

22                          COMPLAINT

23

24   Plaintiff, Kanal V. Gaston, brings this complaint against the Defendants and states the following:

25

26

27

2

## JURISDICTION & VENUE

1. This Court enjoys subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

2. This Court enjoys venue under 28 U.S.C. § 1331 because this case involves a federal question and/or federal laws or treaties under the fourth (4th) and the fourteenth (14th) amendments of the United States Constitution.

## PARTIES

3. <u>Plaintiff</u>, Kanal V. Gaston, is a private individual and not a public figure, currently residing in Phoenix, Arizona. From October 29, 2007 to January 12, 2011, Plaintiff worked in the White-Collar Crimes Unit/Division of the Harris County District Attorney's Office in Houston, Texas as Fraud Examiner with the highest level of responsibilities of conducting white-collar (financial) criminal investigations from inception to final adjudication, and testifying as expert in such matters in judicial (court & grand jury) proceedings. In that capacity, because of Plaintiff oral and written fluency in English, Spanish, and French, he also served as the sole foreign language translator in these criminal investigations whenever necessary, with an annual salary of about $72,000. After spending more than 18 years in college/university, Plaintiff has managed to obtain four (4) college degrees, which includes a master's degree in business and other degrees or studies in criminal justice, accounting/finance, and computer engineering technology. In an effort to enhance his professional reputation and standing in his profession, plaintiff further sacrificed his own time and money to pursue and study for additional professional certifications and/or recognitions. In 2006, plaintiff was granted the Certified Fraud Examiner (CFE) status by the Association of Certified Fraud

3

Examiners (ACFE). In 2010, Plaintiff was granted the Certified Internal Auditor (CIA) status by the Institute of Internal Auditor, and that same year also passed the exam to become Certified Information Systems Auditor (CISA) to be granted by ISACA.

4. <u>Defendant 1</u>, Microsoft Corporation, is located at One Microsoft Way, Redmond, WA 98052. Its listed phone number is 425-882-8080. This defendant has conspired with the other Defendants to compromise Plaintiff's Windows, desktop, and software applications (user interface) in order to facilitate their crimes against Plaintiff.

5. <u>Defendant 2</u>, Trend Micro Incorporated, is located at 10101 N. De Anza Boulevard, Cupertino, CA 95014. Its listed phone number is 408-257-1500. This Defendant conspired with the other Defendants to compromise Plaintiff's computer security system and network as paid for or contracted by Plaintiff, and failed to monitor and/or prevent such potential security risks to plaintiff computer or network system, which facilitated the hacking and the theft of Plaintiff's personal account information.

6. <u>Defendant 3</u>, Symantec Corporation, is located at 20330 Stevens Creek Boulevard, Cupertino, CA 95014. Its listed phone number is 800-441-7234 or 541-334-6054. This Defendant conspired with the other Defendants to compromise Plaintiff's computer security system and network as paid for or contracted by Plaintiff, and failed to monitor and/or prevent such potential security risks to plaintiff computer or network system, which facilitated the hacking and the theft of Plaintiff's personal account information.

7. <u>Defendant 4</u>, VeriSign, Inc. is located at 12061 Bluemont Way, Reston, VA 20190. Its listed phone number is 703-948-3200. This Defendant conspired with the other Defendants to compromise Plaintiff's internet infrastructure or computer security system and network as paid for or contracted by Plaintiff, and failed to monitor and/or prevent such potential security risks to plaintiff computer or network system, which facilitated the hacking and the theft of Plaintiff's personal account information.

8. <u>Defendant 5</u>, BBVA Compass Bancshares, Inc., or Compass Bank, is located at 15 South 20th Street, Birmingham, Alabama 35233. Its listed phone number is 205-297-1986 or

1  800-266-7277. This Defendant conspired with the other Defendants to compromise and

2  sabotage Plaintiff's bank or credit account and economic or business opportunities.

3  9. Defendant 6, Harris County and/or Harris County Government and/or Harris County

4  District Attorney's Office and/or Houston Police Department (HPD) et al., State of Texas

5  is located at 1001 Preston suite 911, Houston TX 77002. The listed phone numbers are:

6  713-755-4099 or 713-755-4000. This Defendant wrongfully terminated Plaintiff's

7  employment and conspired to retaliate, entrap, and torture Plaintiff because of his prior

8  participation in employment discrimination or protected activities, his refusal to

9  participate in immoral and illegal acts, his refusal to return their sex toy "DICK/PENIS,"

10  and have committed several unlawful acts against him, including publishing and

11  republishing false and defamatory statements against Plaintiff.

10. Defendant 7, Texas Office of the Attorney General, 300 W. 15th Street, Austin, TX
12  78701. Defendant also has a mailing address: PO Box 12548, Austin, TX 78711-2548.
13  Email: **greg.abbott@oag.state.tx.us**. Its listed phone number: 512-463-2100 or 800-252-
14  8011 and Fax: 512-475-2994. This Defendant falsely published and/or reported that
15  Plaintiff was 120 days delinquent in child support payment. This Defendant conspired to
16  retaliate, entrap, and torture Plaintiff, and have committed several unlawful acts against
17  him, including publishing and republishing false and defamatory statements against
18  Plaintiff.

19  11. Defendant 8, Maria Raquel Rivas, is an individual and the mother of Plaintiff's child

20  against whom Plaintiff was forced to call the police and the Texas Child Protective

21  Services (CPS) in Houston several times because she had engaged in an abusive and

22  unlawful pattern of stalking and harassing Plaintiff at his home and his place of

23  employment (job), for calling and emailing Plaintiff's friends, girlfriend, family

24  members, colleagues and bosses and others to lie and make false or defamatory

25  statements against Plaintiff as retaliation or grudge or revenge. This Defendant's address

26  is: 1977 Western Village Ln., Houston, TX 77043 and place of business is 955 Cambell

27  Rd., Houston, TX 77024-2803. Her last known phone number is 713-251-3665.

5

12. <u>Defendant 9</u>, Travis County and/or Travis County Government and/or Austin Police Department (APD), State of Texas is located at 314 West 11th Street, Room 300, Austin, TX, 78701. Its listed phone number is 512-854-9415 and Fax: 512-854-9316. This Defendant failed to provide Plaintiff with due process and equal protection under the laws by deliberately failing to properly investigate acts of torture, theft, burglary, hacking, attempted murder, harassment, stalking against Plaintiff. It conspired to retaliate, entrap, and torture Plaintiff.

13. <u>Defendant (s) 10</u>, <u>Pat Donahue</u>, Postmaster General (USPS), United States Postal Service and/or United States Postal Inspection Service is located at 475 L'enfant Plaza SW, At Independence Ave, Washington DC 20260-0010 Phone Number: 202-268-2000. The United States Department of Treasury is located at 1500 Pennsylvania Ave, NW, Washington, DC 20220. Its phone number is: 202-622-2000 and Fax is: 202-622-6415. The Internal Revenue Service (IRS) is located 10th Street & Pennsylvania Ave, NW, Washington, DC 20004. The Federal Bureau of Investigation (FBI) is located at 935 Pennsylvania Ave, NW, Washington, DC 20535-0001. Its phone number is: 202-324-3000. The Central Intelligence Agency (CIA) is located at: Office of Public Affairs, Washington, DC 20505. Its phone number is: 703-482-0623 and Fax is: 703-482-1739. These Defendants have conspired to retaliate, entrap, and torture Plaintiff because of his past lawsuit against the United States Postal Service (USPS), and have committed several unlawful acts against Plaintiff, including torture, bribery, coercion, harassment, stalking, attempted murder, burglary, hacking, theft, unlawful interception of phone and mails as well as electronic communications, censorship and sabotage, entrapments, and publishing and republishing false and defamatory statements against him.

14. <u>Defendant (s) 11</u>, State of New Jersey and/or Jafca Mandzuik and New Jersey State Police (NJSP), Department of Law and Public Safety, division of State Police, are located at PO Box 7068, West Trenton, NJ 08628-0068. Their Phone Number is 609-882-2000. These defendants conspired to retaliate, entrap, and torture Plaintiff because of his past

1  lawsuit against them, and have committed several unlawful acts against Plaintiff,

2  including publishing and republishing false and defamatory statements against him.

3  15. Defendant 12, New York City, & New York City Corporation Counsel, is located at 100

4  Church Street, New York, NY 10007. Its listed phone number is 212-788-0303 and fax

5  number is 212-788-0367. This defendant conspired to retaliate, entrap, and torture

6  Plaintiff because of his past lawsuit against them, and have committed several unlawful

7  acts against Plaintiff, including publishing and republishing false and defamatory

8  statements against him.

9  16. Defendant 13, Lexis-Nexis Group, a division of Reed Elsevier, Inc. and/or Reed Elsevier

10  PLC and/or Reed Elsevier NV and/or Corporation Services Company (CSC) has

11  maintained its headquarters at 125 Park Avenue, Suite 2200, New York, NY 10017. Its

12  listed phone number is 212-309-8100 and 800-455-3947. Defendant claims to engage in

13  providing computer assisted legal research to the public at large and holds the largest

14  electronic database for legal and public records in the world. This Defendant conspired

15  with the other Defendants to retaliate against Plaintiff, and has published or republished

16  false & defamatory statements against him.

17  17. Defendant 14, Business Management Daily (BMD) and/or Capitol Information Group,

18  Inc., a for-profit corporation with principal place of business located at: 7600A Leesburg

19  Pike, West Building, Suite 300, Falls Church, VA 22043 and Mailing Address: P.O. Box

20  9070, McLean, VA 22102-0070. According to its stated purpose, this defendant engages

21  in giving business professionals the news, skills, and strategies they need to grow their

22  businesses, and help these businesses avoid legal pitfalls and advance careers with more

23  than a dozen HR-related newsletters, webnars, special reports, e-letters, podcasts and

24  books. These publications include: The HR-Specialist, Administrative Professional

25  Today, HR Specialist Employment Law, Executive Leadership, Office Technology

26  today, and Small Business Tax Services. Founded in 2009, this Defendant boasts to be

27  the solutions provider of choice for today's and tomorrow's professionals with a base of

130, 000 paid subscribers in 2010 with a mission to expand to one (1) million

subscribers. This Defendant's phone number is 703-905-8000 or 703-394-4931 and Fax number is 703-905-8100 or 703-543-2055. This Defendant conspired with the other Defendants to retaliate against Plaintiff, and has published or republished false & defamatory statements against him.

18. <u>Defendant 15</u>, Google, Inc., is a corporation with principal place of business located at: 1600 Amphitheatre Parkway, Mountain View, CA 94043. Its listed phone number there is 650-253-0000 or 650-253-3425 and fax number is 650-253-0001 or 650-649-2939. Google, Inc. also has headquarters office located at 76 ninth Ave, 4th Floor, New York, NY 10001. Its listed phone number there is 212-565-0000 and fax number is 212-565-0001. According to publicly available information, this defendant reaches more than one billion online users (people) worldwide, with annual net income of more than 8 billion dollars and net asset of more than 38 billion dollars as of December 31, 2010. This Defendant conspired with the other Defendants to retaliate against Plaintiff, and has published or republished false & defamatory statements against him.

19. <u>Defendant 16</u>, Valero Energy Corporation, One Valero Way, San Antonio, TX 78249. Its listed Phone number is 210-345-2000. This Defendant conspired and used its job application process as entrapment or a trick or hoax to lure or coerce Plaintiff into a job interview, so Plaintiff could provide them with his last 10 years of employment history, and used the information to help the other Defendants sabotage Plaintiff's career and/or defame him. They had no intention of giving Plaintiff a job, but stole or failed to reimburse Plaintiff his cost of travel to its location for the job interview. This Defendant conspired to retaliate, entrap, and torture Plaintiff and have committed several unlawful acts against him, including publishing and republishing false and defamatory statements against Plaintiff.

20. <u>Defendants 17</u>, Qatar Gas Operating Company Limited, Joint Ventured with ExxonMobil & Conoco-Phillips and Petro Staff International. Qatar Gas Operating Company Limited has its Headquarters in West Bay Doha, State of Qatar with a mailing address: PO BOX 22666 Doha, State of Qatar. Its listed phone number is 974-4473-6000 and fax number is

974-4473-6666. Petro Staff International is located at 40 Sunpark Plaza, Suite 208, S.E. Calgary, Alberta, Canada T2X 3X7. Phone number is: 403-266-8988 and Fax number is: 403-262-1310. Qatar Gas boasts on its web site to be the largest liquefied natural gas company in the world. This Defendant conspired and used its job application process with Petro Staff International as a trick or hoax to lure or coerce Plaintiff into providing them Plaintiff's passport and personal information. This defendant conspired to retaliate, entrap, and torture Plaintiff and have committed several unlawful acts against him, including publishing and republishing false and defamatory statements against Plaintiff.

21. <u>Defendant 18</u>, Wells Fargo & Company and/or Wells Fargo Bank, maintains its Headquarters at 420 Montgomery Street, San Francisco, CA 94163. Its listed phone number is 866-249-3302. This Defendant has allowed the other Defendants to unlawfully monitor and manipulate or sabotage Plaintiff's bank accounts and credit reporting information. This defendant conspired to retaliate, entrap, and torture Plaintiff, and have committed several unlawful acts against him, including publishing and republishing false and defamatory statements against Plaintiff.

22. <u>Defendant 19</u>, The Lodge at Kingwood Apartments and/or Asset Plus Companies and/or Asset Plus Corp. is located at 938 Kingwood Drive, Kingwood, TX 77339. Its listed phone number is 281-359-5699. Defendant rented Plaintiff Apartment 836 and allowed the other Defendants to burglarize Plaintiff's Apartment, violate his privacy, and steal Plaintiff's files, items, and documents as well as violating Plaintiff's rights under the US Constitution and Texas laws. This Defendant conspired to retaliate, entrap, and torture Plaintiff, and have committed several unlawful acts against him, including publishing and republishing false and defamatory statements against Plaintiff.

23. <u>Defendant 20</u>, The Village at Riverside Apartments and/or The Hayman Company is located at 1500 Crossing place, Austin, TX 78741. Its listed phone number is 512-386-5200 or 877-858-1129. Defendant rented Plaintiff apt 635A and allowed the other Defendants to use that apartment as a **TORTURE CHAMBER** where they falsely imprisoned Plaintiff or preventing him from leaving his apartment with fear and

intimidation, burglarized Plaintiff's Apartment, invaded his privacy, and stole Plaintiff's files, items, and documents as well as violating Plaintiff's rights under the US Constitution and Texas Laws. This Defendant conspired to retaliate, entrap, and torture Plaintiff and have committed several unlawful acts against him, including publishing and republishing false and defamatory statements against Plaintiff.

24. Defendant 21, Allstate Corporation and/or Allstate Insurance Company, maintains its Corporate Headquarters at 2775 Sanders Road, Northbrook, IL 60062. Its listed phone number is 847-402-5000 or 800-255-7828. This Defendant allowed the other Defendants to cause the denial of Plaintiff's personal injury claim as well as breaching their contractual agreement with Plaintiff. This defendant conspired to retaliate, steal, entrap, and torture Plaintiff, and have committed several unlawful acts against him, including publishing and republishing false and defamatory statements against Plaintiff.

25. Defendant 22, T-Mobile USA Inc., is an American Mobile Network Operator headquartered at 12920 SE 38th Street, Bellevue, Washington 98006. Its listed phone number is 800-318-9270. This Defendant has allowed the other Defendants to hack Plaintiff's router and computer unlawfully, intercepting Plaintiff's phone messages and communications, as well as violating Plaintiff's rights under the US constitution and Texas laws. This Defendant conspired to retaliate, entrap, and torture Plaintiff, and have committed several unlawful acts against him, including publishing and republishing false and defamatory statements against him.

26. Defendant 23, Plake and Mintz, PLLC and/or Sylvia Mintz, is located at 602 Sawyer Street # 750, Houston, TX 77007. Its listed phone number is 713-880-3700 or 713-568-7543 and Fax number is 713-880-3703. This Defendant stole $1000 from Plaintiff, as deposit towards his child custody case against Maria Raquel Rivas. This Defendant conspired to retaliate, entrap, and torture, and have committed several unlawful acts against him, including publishing and republishing false and defamatory statements against Plaintiff.

27. Defendant 24, H & H Real Estate Investment Group, Inc. is located at 1378 Halstead Road, Baltimore, MD 21234-6006. Its listed phone number is: 410-668-7694. This Defendant falsely published and/or reported that Plaintiff was evicted from its property (Creg at 208-388-1684), causing Plaintiff pain and agony or to be tortured, and forced him to file for bankruptcy. This Defendant conspired with the other Defendants to retaliate against Plaintiff, and has published or republished false & defamatory statements against him.

28. Defendant 25, The PNC Financial Services Group, Inc. is located at One PNC Plaza, 249 5th Ave, Pittsburgh, PA 15222. Its listed phone number is: 412-762-2000 and Fax: 412-762-7829. This Defendant falsely published and/or reported that Plaintiff was 120 days delinquent in student loan payments, causing Plaintiff to file for bankruptcy. This Defendant conspired with the other Defendants to retaliate against Plaintiff, and has published or republished false & defamatory statements against him.

## STATEMENT OF FACTS AND CLAIMS

29. In April of 2006 Plaintiff moved to Houston Texas in order to be closer to his son and took a job as Senior Internal Auditor with Stanford Financial Group, now a defunct company, where he worked until October of 2007 with an annual salary of about $70,000. While working at Stanford Financial Group, Plaintiff met and became friend with Maria Raquel Rivas who also worked in the accounting department there. In February of 2007, Rivas called and sent Plaintiff an email at work claiming that her younger child had been kidnapped and was missing from school. As any good friend would do, Plaintiff offered to drive to the school and help Rivas deal with this issue. As Plaintiff arrived at the school that afternoon, Rivas claimed that the police had found her son and he was safe and sound. Soon thereafter, Rivas came to Plaintiff's home and the relationship briefly turned intimate.

11

30. One night while Plaintiff was sleeping at his home, he woke up at about 3:00 AM only to find Rivas taking pictures and digging inside of his closet with all of Plaintiff's personal documents on the floor. These documents included a letter and records Plaintiff had obtained from the New Jersey State Police (NJSP) after a state trooper there had fabricated or made false and defamatory statements against Plaintiff causing Plaintiff to be rejected for a job as state trooper, after Plaintiff was already voted best qualified for the job by the New Jersey State Police themselves. Specifically, these false and defamatory statements included the following: (1) that Plaintiff committed and was convicted of insurance fraud in Florida and New York (2) that Plaintiff had committed and was convicted of social security fraud (3) that Plaintiff committed and was convicted of domestic spousal abuse, and (4) that Plaintiff was an illegal alien and trouble maker. Immediately thereafter this incident, Plaintiff asked Rivas to leave his home and never to return. However, not more than a few hours later, Rivas returned and refused to leave. Facing no other choice, Plaintiff was forced to call the police and had Rivas removed from his home. Later that day, both the local police and the school where Rivas's son attended informed Plaintiff that they had absolutely no records that Rivas's son was ever kidnapped or missing from his school as Rivas had claimed earlier, and the whole kidnapping claim was made up by Rivas against her own son as a hoax to gain sympathy. Realizing how dangerous a person Rivas was, Plaintiff decided to end or ceased all formed of communications or contacts with Rivas at that point.

31. Weeks later, Rivas was fired from Stanford Financial Group for making false allegations against another co-worker in the accounting department, and later demanded that Plaintiff give her $3000 for an abortion because she was pregnant for Plaintiff. When Plaintiff refused to give Rivas the money for the abortion, she then launched a massive campaign of stalking, harassment, and defamation of plaintiff. These included several instances of calling and emailing Plaintiff's boss and other co-workers at Stanford Financial Group to tell them that Plaintiff was a criminal and a fugitive from New York, Florida, and New Jersey. As a result, Plaintiff resigned from Stanford Financial Group and took a much

12

1
2
3

lower paying job with the Harris County District Attorney's Office (DA) in October of 2007, where he served as Fraud Examiner/White-Collar Crimes Investigator until January of 2011.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

32. Before the child was born, Rivas contacted Plaintiff and asked him if he could help pay the hospital delivery bill, and Plaintiff paid the entire bill in full. After the child was born, Plaintiff himself decided to go to the Texas Office of the Attorney General's (OAG) to start making child support payment towards the child. However, following the child support agreement, Rivas began to deny Plaintiff his visitation rights and often disappeared when it came time for Plaintiff to pick up the child. She used the child as a tool to manipulate Plaintiff and keep Plaintiff's girlfriend away from the baby. Meanwhile, the few times Plaintiff was able to reach Rivas and pick up the child, there appeared noticeable signs of abuse or neglect on the child. In early of 2009, Plaintiff received both a disturbing phone call and a text message from Rivas, in which she (herself) claimed to be a danger to the child and needed professional help. Feeling helpless and concerned, Plaintiff had no other choice at this point but to call the police and CPS to have them go to Rivas's home and check on the child. After this incident, Rivas threatened Plaintiff that she was once **again** going to Plaintiff's new job (DA's Office) and to the Texas OAG to defame Plaintiff, and then travel to New Jersey, where she knew Plaintiff was seeking justice in the Courts against the NJSP for defamation, in order to teach Plaintiff a lesson. Not long after Rivas made this threat, all of Plaintiff's co-workers at the District Attorney's Office began to scorn and ridicule him, and held Plaintiff in complete contempt or categorically refused to associate with Plaintiff as if Plaintiff had some sort of loathsome disease.

23
24
25
26
27

33. In addition, every time Plaintiff would go to the Child Support Office to obtain help in enforcing the visitation agreement, the workers there began to ridicule and scorn Plaintiff, exclaiming among themselves and in Spanish that the "criminal is here, the criminal is outside." Much worse, Plaintiff even hired a lawyer (Sylvia Mintz) there to help him obtain custody of his child. After Rivas told the lawyer that Plaintiff was a criminal and

fugitive from New York and Florida who was convicted of fraud and domestic abuse all over the place, the lawyer stole Plaintiff's $1000 deposit and fled with Plaintiff's money, refusing to represent Plaintiff. Although Plaintiff became emotionally and mentally drained and distressed by these abusive and cruel treatments of his colleagues and these other people towards him, Plaintiff continued to survive and perform or produce quality work for the Harris County District Attorney's Office.

34. On January 4, 2011, Plaintiff was quietly sitting in his 5th Floor office at the Harris County District Attorney's Office performing his work when First Assistant District Attorney, Jim Leitner, sent Plaintiff an email asking Plaintiff to report to his (Leitner) office in order to interview Plaintiff as part of an internal complaint or investigation involving wicked, corrupt, prosecutorial bias or favoritism, and other pervasive acts committed by his prosecutors and investigators while working for the Harris County District Attorney's Office. During this interview, Mr. Leitner ordered Plaintiff to reveal to him the names of the prosecutors and investigators who were present and gave Plaintiff a "sex toy" (PENIS/DICK) at a prior office party in front of a multitude of other co-workers, and forced Plaintiff to hold the PENIS/DICK in the air while they took pictures and laughed. Facing no other choice, Plaintiff told Mr. Leitner the names of the prosecutors and investigators who gave him the PENIS/DICK at that office party.

35. During this same interview, Mr. Leitner also became aware of another incident of sexual harassment or misconduct, which occurred in September 2010, whereby his prosecutors and investigators unlawfully intercepted one of Plaintiff's text messages and sent a graphic sexual act (PENIS/VAGINA) to Plaintiff's girlfriend in Arizona, as retaliation or punishment for Plaintiff's refusal to return the sex toy (PENIS/DICK) gift they had given Plaintiff at the office party. These prosecutors and investigators had been asking Plaintiff to return the DICK/PENIS since about May of 2009 or about the same time Rivas had threatened Plaintiff she would go to his new job (DA's Office). But, each time they asked, Plaintiff refused to return the DICK/PENIS. In the meantime, Plaintiff was being

14

1    scorned, ridiculed, and shown complete contempt by all of the prosecutors and
2    investigators in the office.

3    36. In addition to these pervasive acts or misconduct listed above, Mr. Leitner also became
4        aware of two other incidents whereby his prosecutors and investigators burglarized
5        Plaintiff's car and apartment to perform illegal searches for the sex toy (PENIS/DICK),
6        and left their DNA (hair) inside of Plaintiff's apartment while Plaintiff was travelling
7        away in Phoenix; and several other incidents whereby his prosecutors and investigators
8        threatened to make life impossible for Plaintiff in Houston because of Plaintiff's refusal
9        to return the DICK/PENIS and because Plaintiff had dissented or refused to participate in
10       other acts of prosecutorial bias or favoritism for their friends or against innocent people.
11       These incidents include: hacking Plaintiff's computer to steal Plaintiff's personal
12       information or private accounts and all of Plaintiff's <u>audit work</u> while he was working for
13       <u>Stanford Financial Group</u> to help them make their case against Stanford, and all of
14       Plaintiff's personal lawsuits, passport, medical, and citizenship files and documents. They
15       also used these important files & information to sabotage Plaintiff's personal or
16       professional life. Further, Mr. Leitner also became aware that his prosecutors and
17       investigators, with the help of other law enforcement agencies and private companies,
18       also placed a GPS device in Plaintiff's brakes system causing it to explode in the middle
19       of a Houston Highway costing about $875 to repair, as well as placing another GPS
20       device in Plaintiff's key ring allowing them to monitor all of Plaintiff's movements in
21       hope to discover the location of the DICK/PENIS. Plaintiff was forced to call 911 twice
22       and file two POLICE complaints/reports (#10218363 & #160276010-A) with the
23       HOUSTON POLICE DEPARTMENT (HPD) in Harris County Texas against them and
24       Maria Raquel Rivas.

25   37. After this interview or upon providing Mr. Leitner with the information he ordered
26       Plaintiff to give him in the presence of Captain Don McWilliams, Mr. Leitner requested
27       that Plaintiff work from home until January 7, 2011, not only for Plaintiff's own safety or

15

fear of immediate retaliation by these prosecutors and investigators against Plaintiff, but also to give Mr. Leitner more time to decide what to do with Plaintiff.

38. On January 7, 2011, Plaintiff reported to Mr. Leitner's office as requested or ordered. On that day, Mr. Leitner and Captain Don McWilliams informed Plaintiff that as a result of the information they ordered Plaintiff to provide them, it had now become impossible for Plaintiff to continue to work at the District Attorney's Office. They gave Plaintiff until January 12, 2011 to return the "Sex Toy" (PENIS/DICK) to them, and then to resign or face termination. After this threat, they made it known to Plaintiff that they had become aware of all of Plaintiff's past lawsuits, his application for residency in Canada, his personal injury claim to Allstate, his job application to Valero and elsewhere, and his investigators had already been working together with the United States Postal Service (USPS) inspectors, the New Jersey State Police (NJSP) investigators, the IRS, and some New York City (NYC) investigators during the past two years to follow plaintiff around and intercept all of Plaintiff's emails, personal accounts, postal service mails, and phone communications in order to develop a comprehensive profile on Plaintiff, his family, and friends. In addition, Plaintiff was already surrounded by their spies or crawlers in his apartment complex where he lived in Houston, and they were ready to send red flags to these companies mentioned above to make sure that all of Plaintiff's applications and claims are denied and that Plaintiff never works again in this country or anywhere else.

39. Further, they made it clear that they already had people working for them inside the Texas Attorney General's Office (OAG) and the major banks around the country who were ready to make sure that Plaintiff never gets custody of his children, and that Plaintiff passport and driver's license would get revoked or suspended for being a deadbeat dad or for not paying child support; and that they would use their internal database to send false financial or credit information to the major Credit Bureaus in order to ruin Plaintiff's credit. Therefore, if Plaintiff did not return the DICK/PENIS as requested, they would unleash all of these investigators, bankers, and federal agents or inspectors to go after Plaintiff to teach him a lesson and destroy him completely or finish him off.

40. On January 12, 2011, as Plaintiff returned to Mr. Leitner's office, they handed Plaintiff a letter/document outlining if plaintiff did not return the "sex toy" (PENIS/DICK), they would unleash the mother of Plaintiff's Child, Maria Raquel Rivas, so she could release a NEWSPAPER article or Publication on Plaintiff along with all of Plaintiff's private information on Google or the internet in order to paint or show all of Plaintiff's friends, family members, colleagues and future employers that Plaintiff was crazy and a trouble maker who was convicted of (1) Insurance and driver's license fraud in Florida and New York (2) Social Security Fraud (3) domestic spousal abuse, (4) that Plaintiff was an illegal alien, (5) that Plaintiff's never gets along with anyone, (6) that Plaintiff committed fraud with the IRS, and (7) that Plaintiff was involved in a ponzi scheme and committed fraud while he was working for *Stanford Financial Group*. Although Plaintiff was absolutely unaware of what Newspaper article or Internet documents they were talking about at that particular time, Plaintiff provided Mr. Leitner with a copy of the DICK/PENIS, a copy of the bill ($875) for repairing the damage to his brakes system, and a copy of the SEX ACT that his prosecutors and investigators had sent to Plaintiff's girlfriend in Arizona earlier. However, Plaintiff refused to return the actual DICK/PENIS, and was forced or coerced to resign from his $72,000/year job as a result.

41. Soon thereafter, Plaintiff received an email from Maria Raquel Rivas accusing Plaintiff again of being a criminal, with an attachment, which includes a Newspaper Article posted on Google, Inc. and/or the Internet, indexed to the Lexis-Nexis Group, and Published by the Business Management Daily and Titled "Insist on thorough documentation of background check results." Here, this article clearly makes an example of Plaintiff as a convicted criminal and served as a form of advertisement to generate memberships and revenues for the Publisher's business by stating as example or support for its title "**recent case**: When Kanal Gaston was rejected after applying to join the New Jersey State Police, he thought it had something to do with his ethnicity." However, **the letter** Gaston got from the State Police made it clear he was rejected because of the totality of the derogatory information collected during the background information, including two

incidents of insurance fraud and work history." This Article or publication or republication also states "when Gaston sued, the State Police introduced a comprehensive background investigation file. It showed the court exactly why it had concluded Gaston was not trooper material-including extensive interviews that revealed spousal abuse." It was at that point that Plaintiff finally realized **for the first time** that Maria Raquel Rivas has been the original source and cause of all his misery during the past two years. She was the only one in Texas who knew of that letter and had stolen it along with other Plaintiff's documents from Plaintiff's home earlier when Plaintiff had called the police to remove her from his home. At this point, it also became clear that Getting Plaintiff to lose his job and have his co-workers, friends, and families turn against him, and by Getting Business Management Daily and Google, Inc. to publish and republish the false and defamatory statements both in print and on the internet is, in whole or in part, the lesson that Maria Raquel Rivas and these investigators or prosecutors or agents had threatened to teach Plaintiff.

42. Worse, this article also contains an automatic Link, which allows (Rivas & others) users to share or send an email copy to another email user with just a simple click, therefore facilitating its multiplication and the spreading of the falsehood against Plaintiff much more quickly.  As Rivas and her counterparts in Houston intensified their acts of stalking, hacking, harassment, threats, intimidation, and other crimes against Plaintiff, Rivas also revealed to Plaintiff **for the first time** that it is indeed the NJSP, the IRS, the NYC, and the USPS investigators or inspectors or other federal agents who forced her to participate in committing these crimes against Plaintiff to teach Plaintiff a lesson, simply because of Plaintiff's past lawsuits or legal complaints against all of them or because Plaintiff had dared to sue them in the past. As a result, Plaintiff finally decided to discretely evade and flee his apartment in Houston at 4:00 AM, fearing for his personal safety. In addition, Plaintiff has been forced to file for bankruptcy, quit law school after one year of study, and spent his last few weeks in Houston living and sleeping in his car and the streets.

43. Despite the fact that Plaintiff holds four college degrees, is fluent in three different languages, and hold multiple professional certifications and recognitions, has shown to be best qualified for any job in his profession, has never done any form of illegal drugs during his entire life, and has never committed or been convicted of any crime anywhere in the world, Plaintiff has not been able to obtain employment anywhere as a direct result of these defendants false or defamatory statements of facts against him. Every time Plaintiff has applied for a job or apartment or anything else, these defendants continuously follow or monitor and intercept Plaintiff's phone calls, credit reports, bank accounts information, friendships, and emails or movements through Google or GPS devices, so they can call these companies themselves and tell them to Google Plaintiff's name. They know full well that once these companies or people see the false or defamatory statements online, which they themselves placed on the internet against Plaintiff, he would be denied relationships and anything he has applied for. Worse, they even used this same perverted practice every time Plaintiff has tried to get a lawyer to represent him. Although Plaintiff has contacted more that 100 lawyers in Texas for help with these matters, not a single one ever returned Plaintiff's call or emails.

44. All of Plaintiff's friends, colleagues, and family members have deserted him and they have bribed and kept everyone from helping Plaintiff. In the meantime, Plaintiff is being chased, defamed, harassed, intimidated, and followed by Rivas and these investigators or agents everywhere he has gone. In a desperate search to recover the DICK/PENIS, they have tried to *entrap* Plaintiff multiple times before the District Attorney's 2012 Re-election campaign gets in full swing.

45. **In August of 2011**, after Plaintiff fled to Austin, Texas, fearing for his personal safety in Houston, Rivas and an army of investigators or spies and agents or crawlers decided to follow Plaintiff all the way to Austin to intensify their harassment, stalking, hacking, defamation, and chase or follow Plaintiff everywhere he went, including at Plaintiff's church or at the post office to intercept Plaintiff's mails out, again in a desperate search to recover the DICK/PENIS and to *entrap* Plaintiff to some fabricated crime.

46. Worse, when these tactics failed to produce the DICK/PENIS, they decided to place a spy by the name of <u>Chad Heath</u> (phone # 770-970-0744) and a camera inside Plaintiff's apartment/room in Austin in order to monitor all of Plaintiff's personal activities, unlawfully collect Plaintiff's DNA (sweaty clothes & hair) and Fingerprints (cups or glasses) from the Apartment, hack Plaintiff's computer again to steal more of Plaintiff's documents and files, and then burglarize Plaintiff's room there. Once again, they stole Plaintiff's passport, citizenship document/certificate, <u>Business Patent documents</u>, money, and other important documents. Because Plaintiff was poor and did not have too much money left, he simply had no other choice but to share a two bedroom apartment in Austin with the only apartment complex there, which was willing to accept Plaintiff or approve his rental application. Little did Plaintiff know that this apartment was a set up used by these Defendants as a **TORTURE CHAMBER** designed specifically for Plaintiff in order to finish him off!

47. When <u>Chad Heath</u> realized that he was being paid to attack and help these investigators or agents or prosecutors destroy or ruin the life of an innocent man (Plaintiff), he decided to quit his so-called job, fled from the apartment, and left Texas altogether. However, before Heath left, he revealed or made it known that Plaintiff was <u>surrounded</u> by other government spies or crawlers who had set up shops in other apartments (4211 & 623) near, below, and next to Plaintiff's apartment, as they had done in Houston, specifically designed to facilitate the TORTURING of Plaintiff day and night. For 40 days and 40 nights, these defendants conspired to TORTURE Plaintiff with sleep deprivation, intimidation, fear, harassment, and isolation. Plaintiff was forced to call 911 each time and file two POLICE complaints/reports (#11-2520854 & #11-2171508) with the AUSTIN POLICE DEPARTMENT (APD) in Travis County Texas, against Maria Raquel Rivas, the USPS or federal investigators, the NYC or NJ investigators, and those who work for the Harris County District Attorney's Office. However, the APD officers claimed that because these acts were committed against Plaintiff by people who were too big and powerful, they were sorry they could not help Plaintiff or mess with the case.

20

48. On September 9, 2011, after Plaintiff was ambushed in front of his apartment complex by two men with white pick-up trucks each, who attempted to murder Plaintiff, the police advised Plaintiff to flee his apartment and move away, which Plaintiff did. As a result, Plaintiff found himself, once again, living in his car and in the streets driving back and forth from <u>Texas to Canada</u>, and <u>from Canada through the deserts of Arizona</u> to find a place to stay temporarily. While traveling to Canada, the immigration officers there informed Plaintiff that although they realized Plaintiff has never been charged and convicted of any crime anywhere in the world, someone from the US government had placed a red flag against Plaintiff, therefore Plaintiff and his vehicle was forced to be interrogated and searched unnecessarily as a result. Worse, while in Canada, Plaintiff decided to go to the Canadian Consulate/Embassy to get the status or an update on his <u>application for residency there</u>, which was submitted and approved more than one year ago. However, the officer at the Canadian Embassy informed Plaintiff that his application was being put on hold indefinitely after someone from the US government had sent them a red flag on Plaintiff.

49. In August of 2011, at APD's request, all EVIDENCE of acts of <u>harassment, retaliation, stalking, burglary, torture, illegal search and seizure, bribery, coercion, invasion of privacy, entrapment, hacking, stalking, defamation, and attempted murder</u> by these defendants against Plaintiff herein (from January 2007 through August 2011) were communicated & provided to the officers and/or investigators of APD for proper investigations.

50. In September 2011, even before Plaintiff drove to Arizona in search of a temporary place to stay, these Defendants had already set up shops below (Apt 1138) and next to Plaintiff's girlfriend's apartment in order to monitor Plaintiff's activities, try determine the location of the DICK/PENIS, and most importantly to prevent Plaintiff from talking or contacting the MEDIA.

51. In November 2011, after Plaintiff took his car to an Allstate location in Phoenix, Arizona to get the damage they committed to his car repaired from their own burglary in Texas,

these Defendants followed Plaintiff to the shop where Plaintiff left the car overnight. Once again, they managed to steal one of Plaintiff's old cell phone from the car. They stole that phone because it contained evidence of threats or crimes they have committed against Plaintiff.

52. In December of 2011, while working out at a local park in Phoenix, these Defendants tried to ambush Plaintiff with a US Postal Service Truck, a local Park Maintenance truck, and another white truck. As Plaintiff began taking pictures of them, they all ran away and broke their cover. As a result of fear for his personal safety, Plaintiff decided to discretely evade the apartment where he was staying in Phoenix and fled to San Francisco, California. While in California, these Defendants continued to follow Plaintiff around in the streets and in the hotel where he was staying at. When Plaintiff called 911, they fled. Plaintiff filed a police report (#111038899) there against them.

53. As Plaintiff realized that his life was also in danger in California, he decided to flee from California to Oregon. While staying in a hotel in Salem, Oregon, these Defendants followed Plaintiff there also and tried to pay off a street thug to harass Plaintiff or hurt him. Once again, Plaintiff was forced to file another police report (#111038899) against them. During the past 12 months alone, Plaintiff has been forced to change his emails and phone numbers more than 25 times and has carried more than 10 different cell phones in order to hide from these naturally born-bullies (Defendants) and keep them from harming him. Plaintiff is seriously concerned for his personal safety. **THEY HAVE TREATED PLAINTIFF AS A LAMB OR SHEEP READY TO BE BUTCHERED** BY ALL.

## COUNT I-DEFAMATION & DEFAMATION PER SE

54. As clearly shown on Plaintiff's FBI criminal background and Texas Department of Public Safety records, Plaintiff has never committed and never been charged and convicted of any crime in the United States or anywhere else in his entire life. Specifically, when these false or defamatory statements listed above were made, Plaintiff was and still remains a

1  United Citizen, Plaintiff has never been charged or convicted of social security fraud;
2  Plaintiff has never been charged and convicted of domestic spousal abuse, Plaintiff has
3  never been charged and convicted of insurance fraud in New York or Florida, Plaintiff
4  never committed and has never been convicted of Ponzi-scheme or fraud while he was
5  working at Stanford Financial Group as claimed or alleged by Rivas, and Plaintiff has
6  been an exemplary employee in every job he has held and never been fired for any cause,
7  but always serving with the highest level of integrity & ethics. Plaintiff has always paid
   his child support and has never been charged or convicted of being a "deadbeat dad," and
8  Plaintiff has never been charged and convicted of fraud with IRS or anywhere else in his
9  entire life, as claimed or accused by Rivas and her counterparts. In fact, Plaintiff has
10 **never** even applied for or ever owned or held any insurance policy in Florida, Plaintiff
11 has maintained a clean and the same driver's license record for about 20 years, and has
12 never been charged and convicted of driver's license fraud in Florida or anywhere else
13 during his entire life.

14  55. These published and republished Statements referenced in paragraph above (hereinafter
15      "Statements") negligently, recklessly, and intentionally impute or assert or imply the
16      following acts of criminal and moral turpitude: (a) that Plaintiff is or has been found
17      guilty of domestic spousal abuse, (b) that Plaintiff is or has been found guilty of two
18      counts of insurance fraud (Florida & New York), (c) that Plaintiff is or has been found
19      guilty of driver's license fraud in Florida, (d) that Plaintiff is or has been found guilty of
20      committing social security fraud, (e) that Plaintiff is or has been found guilty of being an
21      illegal alien, (f) that Plaintiff is or has been found guilty of ponzi-scheme or fraud at
22      Stanford Financial Group, (g) that Plaintiff is or has been found guilty of not being
23      'trooper material," (h) that Plaintiff is or has been found guilty of fraud with the IRS and
24      all over the place, and (i) that Plaintiff is or has been found guilty of "not getting along
25      with anyone."

26  56. These Statements, individually and taken as a whole in context of the article and the issue
27      of *Business Management Daily and Google, Inc,* in which they have appeared, are

defamatory because they falsely impute to Plaintiff corruption, fraud, deceit, as well as the commission of a criminal offense, in a manner ruinous to the reputation and esteem of Plaintiff professionally, locally, nationally, and globally. These defamatory Statements directly and proximately caused Plaintiff general and special damages in the form of injury to his reputation throughout the United States and internationally. These damages include, but are not limited to, Plaintiff's scholarly credibility being compromised, loss of prospective economic opportunities and relations, loss of contracts and speaking invitations, loss of teaching and book publishing opportunities, loss of book sales, and certainly emotional distress and psychological trauma and suffering.

57. These defamatory Statements, therefore, severely injured Plaintiff's reputation as a scholar and expert in white-collar crimes, auditor, and forensic accounting, especially in certain professional circles. By publishing these Statements in hard copy and on the Internet in the *Business Management Daily and Google, Inc.*, Defendants knew they would be republished and read by the general public throughout the United States and elsewhere. These Statements were in fact republished and read by paid members of the Defendants and the general public throughout the United States and elsewhere as a direct, natural, probable, and foreseeable consequence of Defendants' publication and subsequent republication.

58. Worse, <u>Defendant 7</u> negligently, recklessly, and wantonly reported and published falsely that Plaintiff was 120 days delinquent in child support payment and falsely published that Plaintiff's Passport and Driver's license would be suspended or revoked for not paying child support or for being a deadbeat father.

59. By publishing these Statements, Defendants intended to, and did charge Plaintiff with the commission of a crime, and stigmatize Plaintiff as guilty of fraud, domestic abuse, deceit, and injure his professional standing and reputation. The Statements individually and collectively are false, and were false when made. The Statements are defamatory falsehoods, which Defendants knew or should have known were false when made.

24

1

2

## COUNT II-DEFAMATION, DEFAMATION PER SE & PUNITIVE DAMAGES

3

60. Defendants made the Statements with actual malice and wrongful and willful intent to

4

injure Plaintiff. The Statements were made with reckless disregard for their truth or

5

falsity or with knowledge of their falsity and with wanton and willful disregard of the

6

reputation and rights of the Plaintiff. Defendants knew, anticipated, foresaw, and

7

intended that the Statements would be read by persons throughout the United States and

8

the world and would damage the reputation of Plaintiff. Defendants clearly lacked

9

reasonable grounds for making the Statements.

10

61. The Statements, individually and collectively, referred to herein have caused, are causing,

11

and will cause Plaintiff to suffer psychological and emotional trauma and suffering,

12

injury to his professional standing and reputation or good name; and they have held and

will continue to hold Plaintiff up to public scandal, contempt, and ridicule in his personal

13

or professional life. These published and republished Statements were calculated to cause

14

irreparable damages to Plaintiff and expose him to public scorn, hatred, contempt, and

15

ridicule.

16

## COUNT III-WRONGFUL TERMINATION OF EMPLOYMENT

17

18

62. Plaintiff was wrongfully forced or coerced to resign or constructively terminated by

19

Defendant 1 from his $72,000 a year job as a result of Defendants planned conspiracy

20

against Plaintiff, harassment and sexual harassment complaints, Defendant's own internal

21

investigation of such complaints and/or interview of Plaintiff and/or plaintiff's

22

participation therein; Plaintiff's refusal to perform or participate in illegal or immoral or

23

unsafe acts, Defendants' violation of public policies and/or its own policies and/or laws;

24

and Plaintiff's prior participation in employment related discrimination actions or

protected activities. Plaintiff has sustained irreparable economic, emotional, physical, and

25

psychological injuries as a result. Plaintiff worked for Defendant 6 for about 3½ years

26

with exceptional performance records. Plaintiff has never been charged and convicted of

27

25

any crime in the United States or anywhere else in the world during his entire life. Defendants clearly lack any reasonable reason for causing Plaintiff's employment termination, and the subsequent harms or injuries to Plaintiff.

## COUNT IV-RETALIATION, SABOTAGE, FALSE IMPRISONMENT, MALICIOUS PROSECUTION, COERCION, BRIBERY, AND ATTEMPTED MURDER

63. Defendants conspired and have retaliated against Plaintiff for refusing to return the DICK/PENIS and forcing or coercing him to resign or constructively terminating him from his $72,000 a year job. Defendants planned conspiracy against Plaintiff has caused multiple attempts on his life along with great isolation and fear from leaving his apartment or kept him from communicating with others in the outside world physically or electronically, and caused him to be harassed, coerced, and sexually harassed multiple times and through Defendant's own internal employment related investigation of such complaints and/or interview of Plaintiff and/or plaintiff's participation therein; Plaintiff's refusal to perform or participate in illegal or immoral or unsafe acts, Defendants' violation of public policies and/or its own policies and/or laws, and Plaintiff's prior participation in employment related discrimination actions or legally protected activities have caused Defendants' retaliation against him. These Defendants have sabotaged every job opportunity Plaintiff has had during, at least, the past two years. Plaintiff has sustained irreparable economic, emotional, physical, and psychological injuries as a result. Plaintiff worked for Defendant 6 for 3½ years with exceptional performance records, and has never been charged and convicted of any crime in the United States or anywhere else in the world during his entire life.

## COUNT V-CENSORSHIP & INTERFERENCE WITH ECONOMIC OPPORTUNITY

64. More important, in direct response to these crimes committed herein against Plaintiff, he formed a **REGISTERED** nonprofit company under the name of **WR2P.ORG** or the **RETALIATION PROTECTION PROJECT** specifically designed to help workers who have been <u>abused</u> or <u>retaliated</u> against at the work place for reporting abuses by <u>bullies</u> with power or control. However, Because the evidence of all these crimes committed against Plaintiff are posted at this company web site, in direct response from Plaintiff outcry to obtain some form of help from the outside world, these Defendants have conspired to sabotage & censor or shutdown the company by preventing Plaintiff from promoting or marketing or obtaining funding or financing for the business. Plaintiff has sustained irreparable economic, emotional, physical, and psychological injuries as a result.

## COUNT VI-HARASSMENT & SEXUAL HARASSMENT

65. Defendants conspired and committed multiple counts of harassment and sexual harassments against Plaintiff. First, by giving Plaintiff a DICK/PENIS at the work place in front of a multitude of other co-workers, and then subsequently using the DICK/PENIS as a tool to harass, intimidate, and coerced Plaintiff <u>for more than two long years</u>. Second, by sending Plaintiff's girlfriend a sex acts (Penis to Vagina) as retaliation against Plaintiff, and by making threats against Plaintiff. Plaintiff was forced or coerced to resign for refusing to return the DICK/PENIS or constructively terminated from his $72,000 a year job in January of 2011. Plaintiff has sustained irreparable economic, emotional, physical, and psychological injuries as a result. Plaintiff worked for <u>Defendant 6</u> for 3½ years with exceptional performance records. Defendants clearly lack any reasonable ground for causing Plaintiff's employment termination, and the subsequent harms or injuries to Plaintiff.

1

2 ## COUNT VII-BURGLARY, THEFT, AND INVASION OF PRIVACY

3

4 66. By burglarizing Plaintiff's car and his apartment multiple times, hacking Plaintiff's

5 computer and router, and unlawfully intercepting Plaintiff's emails, postal mails, and

6 phone communications to steal Plaintiff's personal files, immigration and citizenship

7 documents, passport, business patent, and other documents, these Defendants conspired

8 and have committed burglary, theft, and invasion of privacy herein against Plaintiff.

9

10 ## COUNT VIII-VIOLATION OF US CONSTITUTIONAL & TEXAS STATE LAWS

11

12 67. As a citizen of the States of Texas and the United States of America, Plaintiff was

13 entitled to his rights of equal protection and due process under both Texas laws and the

14 United States Constitution. By failing to assist or render aid or enforce the laws against

these Defendants and the criminal acts committed against Plaintiff herein, Plaintiff's

15 equal protection and due process rights have been clearly violated under both Texas laws

16 and the United States Constitution. In addition, by burglarizing Plaintiff's car and his

17 apartment multiple times, hacking Plaintiff's computer and router, and unlawfully

18 intercepting Plaintiff's emails, postal mails, and phone communications to steal

19 Plaintiff's personal files and documents or items, these Defendants have violated

20 Plaintiff's rights against unreasonable search and seizure under both Texas laws and the

21 United States Constitution.

22

23 ## PRAYER FOR RELIEF

24

25 33. Plaintiff demands jury judgment against Defendants, jointly and severally as follows: (1)

26 compensatory damages on Count I through Count VIII; (2) Special damages on Count I through

27 Count VIII; (3) punitive damages on Count I through Count VIII; (4) both pre-judgment and

28

post-judgment interest on Count I through Count VIII; (5) Plaintiff prays and demands an **immediate** Restraining Order (RTO) and/or Protective Order and/or Injunction to keep these Defendants away from plaintiff's residence, car, computers and routers or networks, places of employment or business & enjoyment, friends, families, colleagues, and anything associated with Plaintiff or his affairs and documents; and to permanently bar or prevent Defendants from ever publishing or republishing any future statements or records or items with Plaintiff's names and/or associated with Plaintiff, and to permanently remove all such items or records from their databases or files or prints or the internet altogether <u>unless authorized</u> by Plaintiff in writing; and (6) such other and further relief as this Court finds just and equitable.

**JURY TRIAL DEMANDED ON ALL COUNTS OR ISSUES**

Respectfully submitted,

Kanal V. Gaston, Pro Se